IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-4215 |
| | § | |
| RHONDA J. PANTALION, | § | |
| | § | |
| Defendant. | § | |

**ORDER ENTERING DEFAULT JUDGMENT
AND AWARDING FEES**

Wells Fargo Bank, N.A. sued Rhonda J. Pantalion, alleging that Pantalion defaulted on her home-mortgage loan and that it is entitled to foreclose. Pantalion was properly served but did not appear, answer, assert a defense, or give any indication that she intended to do so. Wells Fargo has moved for default judgment and attorney's fees, arguing that the complaint states a plausible claim and that both Texas law and the home-mortgage loan authorize attorney's fees for a foreclosure action. (Docket Entry Nos. 8, 17–18). The court enters default judgment and awards Wells Fargo attorney's fees against the property after a foreclosure sale. Final judgment is separately entered. The reasons are explained in detail below.

**I.      Background**

In 2004, Pantalion obtained a $104,250 home-mortgage loan from Olympus Mortgage Company to purchase a home in Katy, Texas. (Docket Entry No. 1 at 4). Pantalion signed a Promissory Note, agreeing to repay the loan amount in monthly payments of $768.59, and a Security Agreement that gave Olympus a security interest in the home. (*Id.*). The Note and Security Agreement were recorded in the Harris County Public Records. (*Id.*).

The Note stated that if Pantalion "did not pay the full amount of each monthly payment on the date it is due, [she] will be in default." (*Id.* at 4). If Pantalion defaulted, Wells Fargo could inform Pantalion in writing that if she did not pay the amount due within 30 days, her loan would be accelerated, requiring her to immediately pay the full loan balance. (*Id.* at 4, 20). The Note and Security Agreement required all notices to be in writing and sent by first class mail. (*Id.* at 4, 17). To foreclose on Pantalion's home, Wells Fargo requires a court order. (*Id.* at 20).

Olympus negotiated and endorsed the Note to Ameriquest Mortgage Company, without recourse. (Docket Entry No. 18-1 at 35); *see First Nat'l Acceptance Co. v. Dixon*, 154 S.W.3d 218, 222 (Tex. App.—Beaumont 2004, no pet.) ("Negotiation is transfer of possession of an instrument by a person other than the issuer to a person who thereby becomes its holder."). In August 2004, Ameriquest assigned the Note to "WELLS FARGO BANK NATIONAL ASSOCIATION AS TRUSTEE." (Docket Entry No. 18-1 at 37–38). The assignment was recorded in the Harris County Public Records. (*Id.*). Then, in February 2008, Wells Fargo Bank National Association as Trustee assigned the Note to "WELLS FARGO BANK, N.A. AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2004 ASSET-BACKED PASS-THROUGH CERTIFICAES SERIES 2004-MHQ1." (*Id.* at 40–42). This assignment, too, was recorded in the Harris County Public Records. (*Id.*).

Pantalion did not pay her mortgage on May 1, 2018, as required by the Note, and has not made a payment since. (*Id.* at 4). In July 2018, Ocwen Loan Servicing, LLC, the loan servicer for Wells Fargo, sent Pantalion a Notice of Default by certified mail, informing her that she was in default and owed $2,954.97. (Docket Entry No. 1-1 at 30–31). The Notice stated that Pantalion had until August 12, 2018, to cure the default, and that a failure to cure would lead to the loan's acceleration and, if she could not pay the loan's full balance, a foreclosure sale. (*Id.*). The Notice

stated that after acceleration, but before foreclosure, Pantalion could attempt to reinstate the loan, "depending on the terms of the note and mortgage, any payments received and/or any relevant prior court order." (*Id.* at 31).

Pantalion did not cure the default. In September 2018, a law firm sent Pantalion a Notice of Acceleration by certified mail, stating that Wells Fargo had accelerated her loan and that she owed $93,046.57. (*Id.* at 35). The Notice stated that Pantalion had 30 days to "dispute the validity of the debt." (*Id.*). Pantalion did not do so, and she has not attempted to pay any part of the loan balance.

In November 2018, Wells Fargo sued Pantalion seeking a declaration that she was in default and permission to foreclose under the Security Agreement and Texas Property Code § 51.002. (Docket Entry No. 1 at 5). Wells Fargo also requested attorney's fees. (*Id.*). Attached to the complaint were the Note, the Security Agreement, Notice of Default, and Notice of Acceleration. (Docket Entry No. 1-1).

Edward Johnson, a process server, served Rhonda Pantalion in person with the summons and complaint, and informed her of those documents' contents, on December 21, 2018, at 2:38 p.m. (Docket Entry No. 6 at 3). The summons stated that if Pantalion failed to respond within 21 days of being served, "judgment by default will be entered" for "the relief demanded in the complaint." (*Id.* at 1). Pantalion did not appear, answer, file a Rule 12(b) motion, or request more time to do so. Wells Fargo moved for entry of default and default judgment. (Docket Entry No. 8). The court entered default but declined to enter default judgment, ordering Wells Fargo to "submit the proof of service of the default-judgment motion, the loan's assignment to the mortgage-back[ed] securities trust, and evidence of reasonable attorney's fees." (Docket Entry No. 9 at 6).

3

Wells Fargo has supplemented the record with submitting an affidavit from its counsel; proof that the default judgment motion was sent to Pantalion by certified mail; the loan assignments; and evidence of the reasonable attorney's fees. (Docket Entry No. 18). Wells Fargo argues that Pantalion's failure to appear, answer, or move under Rule 12(b) supports a default judgment, and that the complaint states a plausible claim. (*Id.* at 1–2; Docket Entry No. 8 at 3–6). Wells Fargo has also moved for $7,087.66 in attorney's fees, submitting an affidavit and invoices in support. (Docket Entry No. 17). Wells Fargo's motions are considered below.

## II. The Legal Standard

The court has entered default against Pantalion. (Docket Entry No. 9). After default is entered, a plaintiff may seek default judgment under Federal Rule of Civil Procedure 55(b). *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The plaintiff must submit evidence supporting that the defendant has been properly served with the summons, complaint, and the default judgment motion. *James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.*, No. 16-CV-463, 2018 WL 4688778, at * 3 (W.D. Tex. July 5, 2018); *Hazim v. Schiel & Denver Book Grp.*, No. H-12-1286, 2013 WL 2152109, at *1 (S.D. Tex. May 16, 2013); S.D. TEX. LOCAL R. 5.5 (a default judgment motion "must be served on the defendant-respondent by certified mail (return receipt requested)"). Absent proper service, a district court lacks personal jurisdiction, and any default judgment would be void. *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986).

A "party is not entitled to a default judgment as a matter of right." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). "Defaults are 'generally disfavored.'" *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 225 (5th Cir. 2018) (quoting *Mason & Hanger-Silas Mason Co. v. Metal Trades Council of*

*Amarillo & Vicinity, AFL-CIO*, 726 F.2d 166, 168 (5th Cir. 1984)). The Fifth Circuit favors "resolving cases on their merits." *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018) (quotation omitted). "This policy, however is 'counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion.'" *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (alterations omitted) (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990)). The court may enter default judgment where "the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

"A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). For a default judgment to stand, the complaint must satisfy Federal Rule of Civil Procedure 8's requirements. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497–98 (5th Cir. 2015). "On appeal, the defendant, although he may not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgement." *Nishimatsu*, 515 F.2d at 1206.

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual

5

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Generally, the entry of default judgment is committed to the discretion of the district judge." *Mason v. Lister*, 562 F.2d 343, 344 (5th Cir. 1977). "Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, even a slight abuse of discretion may justify reversal." *Wooten*, 788 F.3d at 496 (quoting *In re Chinese–Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014)).

## III. Analysis

### A. Default Judgment

The record evidence supports that Pantalion was properly served in person with the summons and the complaint, and that Wells Fargo sent the default judgment motion to her home address by certified mail. (*See* Docket Entry Nos. 3, 18-2). This lawsuit has been pending since November 2018, and Pantalion has not appeared, answered, moved under Rule 12(b), or asked for time to do so. She has been "essentially unresponsive." *Pelican Homestead*, 874 F.2d at 276.

Wells Fargo seeks a foreclosure order. "To show entitlement to an order authorizing foreclosure on a home equity loan in Texas, [Wells Fargo] must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Article 16, Section 50(a)(6) of the Texas Constitution; (3) [Pantalion] is in default under the Note and [Security Agreement]; and (4) [Pantalion] has been properly served with notice of default and notice of acceleration." *Riley v. CitiMortgage, Inc.*, No. 16-CV-2970, 2018 WL 1899292, at *5 (N.D. Tex. Apr. 20, 2018); *see also Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013).

The Note and Security Agreement show that Pantalion purchased a home with debt and that this debt was secured by the Security Agreement, a lien created under Texas Constitution Article 16, Section 50(a)(6). (Docket Entry No. 1-1 at 2–26). The complaint alleges that Pantalion has not paid her mortgage since May 2018 and that she is in default. (Docket Entry No. 1 at 4). The Notice of Default and Notice of Acceleration were properly sent to Pantalion's home address by certified mail, and they support the complaint allegations of default. (Docket Entry No. 1-1 at 30–35); *see* TEX. PROP. CODE § 51.002(d) (the mortgage servicer must notify the lender of default "with written notice by certified mail"). The indorsement and assignments support a reasonable inference that Wells Fargo is the current note holder. (Docket Entry No. 18-1 at 3, 35, 37–38, 40–41). Based on the complaint allegations, its attachments, and the default-judgment submissions, the court finds that the complaint and submissions support a plausible inference that Wells Fargo is entitled to a foreclosure order. Wells Fargo's motion for default judgment is granted. (Docket Entry Nos. 8, 18).

**B.     Attorney's Fees**

Wells Fargo has moved for $7,087.66 in attorney's fees, submitting an affidavit and invoices in support. (Docket Entry No. 17). The affidavit states that the "hourly rate charged is $215.00 per hour for attorneys and $95.00 per hour for paralegals and legal assistants." (Docket Entry No. 17-1 at 3). The invoices show the hours spent on the case since November 2018. (Docket Entry No. 17-1 at 9–26). The combined invoices show $6,296 in attorney's time and $791.66 in costs, such as for filings and process servers. (*Id.* at 26).

"[T]he award of attorney's fees is part of the substantive right of a suit" and "depends on the law of the state whose rules govern the substantive claims." *Mut. Concepts, Inc. v. First Nat'l Bank of Omaha*, 495 F. App'x 514, 517 (5th Cir. 2012) (quoting *Kucel v. Heller*, 813 F.2d 67, 73

(5th Cir. 1987)). "Under general Texas contract law, a party may recover attorneys' fees when such recovery is provided by statute or by contract." *Huston*, 988 F. Supp. at 741 (citing *In re Velazquez*, 660 F.3d 893, 895–96 (5th Cir. 2011)). "[H]ome equity notes are non-recourse as a matter of Texas law, but that rule does not bar recovery of attorneys' fees and other expenses." *Id.* at 742; *see Johnson v. HomeBridge Fin. Servs., Inc.*, Civ. A. No. H-16-748, 2017 WL 1403300, at *5 (S.D. Tex. Apr. 18, 2017) ("Home equity loans are generally non-recourse and preclude contractual mortgagor liability."). Wells Fargo may "recover its attorneys' fees, if permitted under the relevant contract, against the mortgaged property after a foreclosure sale." *Huston*, 988 F. Supp. at 741; *Johnson*, 2017 WL 1403300, at *5 ("[A] mortgagee may recover its attorneys' fees, if the contract permits, against the mortgaged property from any surplus."). The Note and Security Agreement do allow Wells Fargo to recover reasonable attorney's fees, and state that any fees "become additional debt." (Docket Entry No. 1-1 at 4, 15). Wells Fargo may recover attorney's fees, not against Pantalion personally, but "against the property upon a foreclosure sale." *Johnson*, 2017 WL 1403300, at *5.

After a careful review of Wells Fargo's affidavit and invoices, the court agrees that the rates charged are reasonable compared to attorneys with similar experience in a similar market, and that the number of hours expended are reasonable compared with the time and labor required for similar legal services. *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (listing factors relevant to reasonableness, including "the time and labor required," the "ability of the lawyer or lawyers," and "the fee customarily charged in the locality for similar legal services"); *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) ("A reasonable attorney's fee is one that is not excessive or extreme, but rather moderate or fair." (quotation omitted)). Wells Fargo may

recover $7,087.66 in reasonable attorney's fees "as part of the note balance that may be satisfied through a foreclosure sale of the property." *Huston*, 988 F. Supp. at 742.

## IV. Conclusion

The motions for default judgment and attorney's fees are granted. (Docket Entry Nos. 8, 17–18). Wells Fargo may recover $7,087.66 in reasonable attorney's fees against the property on the foreclosure sale. Final judgment is separately entered.

SIGNED on June 20, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge